# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:14cv404-FDW

RAMON DEANGELO CUNNINGHAM, )
                                                  )
               **Petitioner,**        )
                                                  )
**vs.**                                         )        **ORDER**
                                                  )
**FRANK PERRY,**                      )
                                                  )
               **Respondent.**      )
_____)

      **THIS MATTER** is before the Court upon Ramon Deangelo Cunningham's pro se

Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also

before the Court are Respondent's Motion for Summary Judgment (Doc. No. 6) and Petitioner's

motion to amend his Petition to name the correct respondent (Doc. No. 10).

## I.      BACKGROUND

      On October 11, 2010, Petitioner was indicted on one count of possession with intent to

sell or deliver cocaine in violation of N.C.G.S. § 90-95(a)(1) and on one count of having

obtained the status of habitual felon in violation of N.C.G.S. § 14-7.1. He was tried before a jury

during the May 20, 2011 criminal session of the Mecklenburg County Superior Court. The

North Carolina Court of Appeals summarized the State's evidence:

> On 26 May 2009, Detectives Hetrick and Shipman of the Charlotte-Mecklenburg
> Police Department set up surveillance across the street from Breakroom Pool Hall,
> investigating a tip from a confidential informant (CI) that Adrian McCorey was
> known to sell drugs in the parking lot of the pool hall. The detectives observed
> McCorey loitering in the parking lot of the pool hall with Ramone Cunningham
> (Defendant). Detectives Hetrick and Shipman reported seeing Defendant toss a
> small, white object on the ground near the back of a nearby vehicle. Thereafter,
> investigating officers found a small bag containing cocaine near the back of the
> vehicle, in a location consistent with where they observed Defendant toss the
> object.

State v. Cunningham, No. COA12-23, 2012 WL 4878855 at *1 (N.C. Ct. App. Oct. 16, 2012) (unpublished).  Defendant filed, and the trial court denied, a motion to compel the State to release the identity of the confidential informant.  Id.  The jury acquitted Petitioner of possession of cocaine with intent to sell or deliver and convicted him of the lesser included offense of possession of cocaine, as well as having attained habitual felon status.  Id.  The court sentenced Petitioner under the habitual felon statute to 133-169 months incarceration.  Id.

Petitioner filed a direct appeal, which the North Carolina Court of Appeals denied.  Id. Petitioner then filed a Petition for Discretionary Review with the North Carolina Supreme Court, which was denied on April 11, 2013.  State v. Cunningham, 739 S.E.2d 841 (N.C. 2013).

On March 25, 2014, Petitioner filed a Motion for Appropriate Relief ("MAR") in the Mecklenburg County Superior Court, followed by a motion to amend his MAR on April 2, 2014. On May 28 2014, the court denied Petitioner's amended MAR.  (Order Den. Am. MAR 25, Doc. No. 1.)  Petitioner filed a Petition for a Writ of Certiorari with the North Carolina Court of Appeals, which was denied June 25, 2014.  (Order Den. Cert. Pet. 24, Doc. No. 1.)

Petitioner filed the instant habeas petition on July 24, 2014.  (Doc. No. 1.)  He raises the following claims:  1) the trial court violated Petitioner's due process rights when it refused to require the State to disclose the identity if the confidential informant; 2) trial counsel rendered ineffective assistance; 3) appellate counsel rendered ineffective assistance; 4) Petitioner's habitual felon sentence is grossly disproportionate in violation of the 8th Amendment; 5) prosecutors withheld exculpatory material evidence; and 6) the trial court miscalculated Petitioner's prior record level at sentencing.  Respondent filed a Response and a Motion for Summary Judgment on September 11, 2014.  (Doc. Nos. 6, 7.)  Petitioner filed a response in

opposition to the Motion for Summary Judgment (Doc. No. 9), the instant Motion to Amend (Doc. No. 10), and an "addendum" to his Response (Doc. No. 11).

## II.  STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.  The Antiterrorism and Effective Death Penalty Act of 1996

Review of Petitioner's claims that were adjudicated on their merits by the state courts is limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000). This Court may grant habeas relief on claims of constitutional error adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." Williams, 529 U.S. at 405. A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407. A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## III    DISCUSSION

### A. Petitioner's Motion to Amend to Name the Correct Respondent

Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a Petition for Writ of Habeas Corpus name the person who has immediate custody of the petitioner as the respondent in the action. Rule 2(a), 28 U.S.C. folio § 2254; see also Rumsfeld v. Padilla, 542 U.S. 426, 434–47 (2004) (stating the writ should be directed to the "person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge."). Petitioner originally named North Carolina as Respondent in this action but now moves to amend his habeas petition to name Frank L. Perry, Secretary of the North Carolina Department of Public Safety as Respondent. (Doc. No. 10.)

Petitioner's motion shall be granted. Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases, the caption now properly reflects Secretary Perry as Respondent.

### B. Procedural Default

Respondent asserts that several of Petitioner's claims are procedurally defaulted. The doctrine of procedural default provides that "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000). Under North Carolina law, claims raised in an MAR that could have been raised on direct appeal, but were not, are subject to dismissal under an adequate and independent state procedural rule, N.C.G.S. § 15A-1419(a)(3). See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) ("We have consistently held that § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default.").

Respondent contends that Petitioner was in a position to raise his ineffective assistance of trial counsel, Eighth Amendment, and prosecutorial misconduct claims on direct appeal but did not do so. Instead, Petitioner raised those claims for the first time in his amended MAR. Respondent argues that the state court denied the claims as procedurally barred. (Resp't's Mem. 5 (citing N.C.G.S. § 15A-1419(a)(3) and (b) (2011)), Doc. No. 7.)

The Mecklenburg County Superior Court summarily denied Petitioner's amended MAR, in its entirety. (Order Den. Am. MAR 25-26, Doc. No. 1.) It gave the following reason for doing so: "The Court finds that the Motion fails to show an entitlement to relief upon any of the grounds set forth in N.C.G.S. § 15A-1415(b)." (Order Den. Am. MAR, supra, at 25.) Section 15A-1415(b) enumerates the grounds upon which relief may be granted by way of an MAR.[1]

---

[1] North Carolina General Statute § 15A-1415(b) lists ten grounds for relief by way of an MAR. The first five grounds are:

> (1) The acts charged in the criminal pleading did not at the time they were committed constitute a violation of criminal law.
> (2) The trial court lacked jurisdiction over the person of the defendant or over the subject matter.
> (3) The conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina.

Notably, it does not list any procedural rules barring relief. Those are found at N.C.G.S. § 15A-1419(a)[2], a statute that the Mecklenburg County Superior Court did not cite as a basis for denying Petitioner's MAR, or any claims therein. While it may be accurate that the state court could have barred the challenged claims under § 15A-1419(a), there is nothing in the court's order indicating that it did so.

This Court will not read into the state court order something that is not there. Therefore, the Court finds that the Mecklenburg County Superior Court denied Petitioner's amended MAR on the merits, and did not rely upon a state procedural rule to bar Petitioner's ineffective assistance of trial counsel, Eighth Amendment, and prosecutorial misconduct claims.

### C. Disclosure of the Identity of the Confidential Informant

Petitioner raises two due process claims related to the identity of the confidential informant ("CI"). The first alleges trial court error for refusing to compel the State to divulge the identity of the CI. Petitioner raised this claim on direct appeal. The second alleges prosecutorial misconduct for failing to disclose the identity of the CI. Petitioner raised this claim in his amended MAR. Both claims were rejected on the merits in the state courts.

---

(4) The defendant was convicted or sentenced under a statute that was in violation of the Constitution of the United States or the Constitution of North Carolina.
(5) The conduct for which the defendant was prosecuted was protected by the Constitution of the United States or the Constitution of North Carolina.

[2] The following are grounds for the denial of a motion for appropriate relief:
(1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so. This subdivision does not apply when the previous motion was made within 10 days after entry of judgment or the previous motion was made during the pendency of the direct appeal.
(2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment or upon a previous motion or proceeding in the courts of this State or a federal court, unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.
(3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.
(4) The defendant failed to file a timely motion for appropriate relief as required by G.S. 15A-1415(a).

N.C. Gen. Stat. § 15A-1914(a).

Prior to trial, defense counsel made a motion to require the State to disclose the identity of its CI. (Trial Tr. 12, Doc. No. 7-2.) The prosecutor objected, asserting that the CI was not involved in the investigation or drug transaction but merely tipped off police that Adrian McCorey was selling drugs outside the pool hall, was not present during the stake-out of the pool hall or the arrests of McCorey and Petitioner, did not know who Petitioner was, and would not testify at trial. (Trial Tr., supra, at 12-14.) The court denied the motion. (Trial Tr., supra, at 16.) The CI did not testify at the trial, and no direct mention of him was made before the jury.

On direct appeal, Petitioner asserted that the CI could have provided favorable testimony for his defense. See Cunningham, 2012 WL 4878855 at *1. Relying on the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963), the appellate court concluded that there was "no . . . reasonable probability that the CI would provide information that could alter the outcome of [the] trial." Cunningham, 2012 WL 4878855 at *2.

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. Evidence is favorable to the accused if it is either exculpatory or impeaching. See Strickler v. Greene, 527 U.S. 263, 281–282 (1999). Evidence is "material" if its suppression prejudiced the defendant. See id. at 282. To demonstrate prejudice, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.

The principal difference between Brady and the present case is that neither Petitioner nor his attorney had any way to determine whether the CI could have provided information favorable

to the defense because they had no way to identify him.  In <u>Roviaro v. United States</u>, the

Supreme Court recognized that governments have the privilege to withhold from disclosure the

identity of confidential informants who provide information about criminal activity to law

enforcement.  353 U.S. 59 (1957); <u>see</u> <u>also</u> <u>McLawhorn v. State of North Carolina</u>, 484 F.2d 1

(4th Cir. 1973) (applying <u>Roviaro</u> in habeas).  The Court held, however, that "[w]here the

disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is

essential to a fair determination of a cause, the privilege must give way."  <u>Roviaro</u>, 353 U.S. at

60-61.  The Court explained that "[t]he problem is one that calls for balancing the public interest

in protecting the flow of information [about criminal activity to law enforcement] against the

individual's right to prepare his defense."  <u>Id.</u> at 62.  Whether an informant's identity must be

disclosed "depends on the particular circumstances of each case, taking into consideration the

crime charged, the possible defenses, the possible significance of the informer's testimony, and

other relevant factors."  <u>Id.</u> at 62.

       It is well-established in the Fourth Circuit that disclosure of an informant's identity is

required where the informant is an actual participant in the criminal offense, particularly where

he helps set up the offense.  <u>See</u> <u>McLawhorn</u>, 484 F.2d at 5.  "On the other hand, the privilege of

nondisclosure ordinarily applies where the informant is neither a participant in the offense, nor

helps set up its commission, but is a mere tipster who only supplies a lead to law . . . enforcement

officers."  <u>Id.</u>

       The facts of this case show that the CI was a mere "tipster."  (Trial Tr. 12-14, Doc. No. 7-

2.)  The CI was not involved in the investigation of Adrian McCorey but merely tipped off police

that McCorey was selling drugs outside the pool hall.  Nor was the CI involved in any drug

transaction involving McCorey or Petitioner that led to their arrests.  Finally, the CI was not

present during the stake-out of the pool hall or the arrests of McCorey and Petitioner. Consequently, he was not qualified to testify directly concerning anything that happened outside the pool hall once the police initiated their observation of McCorey.

Furthermore, to show a violation of the Due Process Clause, a defendant must make some showing that the evidence lost through non-disclosure "would be both material and favorable to the defense." See United States v. Valenzuela-Bernal, 458 U.S. 858, 872 (1982). The Supreme Court has not adopted a specific materiality standard for due process claims involving non-disclosure of an informant's identity. It has, however, adopted a materiality test in a case comparable to Roviaro. See Valenzuela-Bernal, 458 U.S. at 870 (describing Roviaro as the closest case on point). In Valenzuela-Bernal, two witnesses were deported before the defense could interview them. The Supreme Court held that "due process is violated when testimony is made unavailable to the defense by Government deportation of witnesses 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" Bagley, 473 U.S at 681-82 (quoting Valenzuela-Bernal, 458 U.S. at 874). The Court cautioned that when assessing prejudice, trial courts "should afford some leeway for the fact that the defendant necessarily proffers a description of the material evidence rather than the evidence itself." Valenzuela-Bernal, 458 U.S. at 874.

Petitioner contends that the informant could have testified that he did not know Petitioner and that he had never seen Petitioner before. This testimony, Petitioner argues, would have rebutted the theory that he was involved in selling drugs with McCorey. Even assuming Petitioner is correct, it is not reasonably likely that this testimony would have affected the jury's verdict. The jury found Petitioner guilty of the lesser offense of possession of cocaine, as opposed to the trafficking offense. As the North Carolina appellate court noted, to establish

possession of a controlled substance, prosecutors had to prove that Petitioner "ha[d] both the power and intent to control its disposition or use." Cunningham, 2012 WL 4878855, at *2 (citation omitted) (alteration in original). The CI could not have testified directly whether Petitioner was in possession of a controlled substance.

Petitioner has failed to demonstrate that the evidence lost through non-disclosure of the CI would have been "both material and favorable to [his] defense." See Valenzuela-Bernal, 458 U.S. at 872. Suffice it to say that if Petitioner has not satisfied the prejudice standard articulated in Valenzuela-Bernal ("reasonable likelihood that the testimony could have affected the judgment of the trier of fact"), he has not satisfied Brady's prejudice standard ("reasonable probability that the result of the proceeding would have been different"). Therefore, the North Carolina appellate court's rejection of this claim did not involve an unreasonable application of clearly established Federal law. See § 2254(d)(1). For the same reasons, the MAR court's rejection of Petitioner's prosecutorial misconduct claim did not involve an unreasonable application of clearly established Federal law. See § 2254(d)(1). Consequently, Respondent is entitled to summary judgment in both of Petitioner's claims related to the identity of the CI.

### D. Ineffective Assistance of Counsel Claims

#### i. Trial Counsel

Petitioner claims that trial counsel rendered ineffective assistance by: 1) failing to present evidence, including the testimony of a "known" witness; 2) refusing to allow Petitioner to testify in his own defense; and 3) failing to advise Petitioner of the improbability of acquittal and the benefit of accepting a plea deal. Petitioner raised these claims in his amended MAR, and they were denied on their merits.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 3745 (1986). In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

When assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough to show "that the errors had some conceivable effect on the outcome of the proceeding," id. at 693, or that "it is possible a reasonable doubt might have been established if counsel acted differently," Harrington v. Richter, 562 U.S. 86, 111 (2011). Instead, "Strickland asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12.

### (a)  Evidence-Related Claims

Petitioner's first complaint is that counsel failed to present any evidence in Petitioner's defense.  Petitioner asserts that he told counsel that there were two other men present when the police arrived at the pool hall and that, before running from the scene, one of them tossed something on the ground in the area where the cocaine was found.  Petitioner asserts further that he told counsel that Adrian McCorey also saw one of the men toss something to the ground, that McCorey was willing to testify on Petitioner's behalf, and that Petitioner wanted McCorey subpoenaed to testify at trial.  Additionally, Petitioner insists that he told his attorney that he wanted to testify in his own defense, but the attorney refused to let him testify and instructed him to answer "no" if the trial judge asked Petitioner if he wanted to testify.

A defendant has "'the ultimate authority' to determine 'whether to plead guilty, waive a jury [trial], testify in his or her own behalf, or take an appeal.'"  Florida v. Nixon, 543 U.S. 175, 187 (2004) (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)).  "Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action," or defer to the wishes of the defendant.  Nixon, 543 U.S. at 187.  While counsel otherwise has a duty to consult with the client "regarding 'important decisions,' including questions of overarching defense strategy," Nixon, 543 U.S. at 187 (quoting Strickland, 466 U.S. at 688), he or she generally has the authority to manage most aspects of the defense without obtaining the client's approval, see Taylor v. Illinois, 484 U.S. 400, 417-18 (1988).

The MAR court reasonably could have determined that counsel's alleged refusal to call McCorey as a witness was within the wide range of professional competence.  See Strickland, 466 U.S. at 689.  At the conclusion of the State's evidence, the trial court engaged in colloquy with Petitioner regarding any evidence he wished to present in defense.  (Trial Tr. 180-85, Doc.

No. 7-3.)  Petitioner acknowledged that he and his attorney had discussed whether to offer evidence at trial (Trial Tr., supra, at 181), and he informed the court that he wished to present the testimony of Officer Carey, a patrolman who had assisted with his arrest (Trial Tr., supra, at 181, 183).  Because counsel had not intend to call Carey as a witness (Trial Tr., supra, at 181-82), and Petitioner did not inform counsel until that morning -- the last morning of trial -- that he wanted to call Carey, the officer had not been subpoenaed (Trial Tr., supra, at 182-83).  Notably, Petitioner did not inform the court that he wanted to call McCorey, or any other witness, in addition to Carey.  Nor did Petitioner inform the court that he and his attorney previously had disagreed about whether to present evidence.

In sum, the record indicates that counsel discussed evidentiary issues with Petitioner prior to trial and that they were in agreement until the last morning of trial that no witnesses would be called.  Other than McCorey's testimony, Petitioner has not identified any evidence that counsel should have presented at trial,

Furthermore, a reasonable attorney could have concluded that putting McCorey on the stand would not have improved prospects for acquittal.  As an initial matter, McCorey's credibility was questionable.  He was described to the jury as a "known drug dealer," who was the target of the police surveillance related to this case.  (Trial Tr. 68-69, Doc. No. 7-2; Trial Tr. 97, 142-43, Doc. No. 7-3.)

Additionally, the detectives conducting the surveillance of McCorey observed Petitioner and McCorey get into McCorey's GMC Yukon on several occasions with individuals who approached them in the pool hall parking lot.  In a search of the Yukon, police found marijuana, and McCorey was arrested for possession of marijuana.  (Trial Tr. 58, Doc. No. 7-2; Trial Tr. 200, Doc. No. 7-3.)  Had he testified, McCorey would have been subject to cross-examination by

prosecutors about what had transpired with Petitioner and the others in the Yukon. For his part, defense counsel used cross-examination of the detectives to elicit that McCorey was the target of the surveillance; that police did not know who Petitioner was until they arrested him, and that one of the photos taken by the surveillance team shows two unidentified men standing toward the rear of the Yukon, where the cocaine was later found.

The record also contradicts Petitioner's assertion that he wanted to testify in his defense and that his attorney would not let him:

> THE COURT: Outside the presence of the jury. Mr. Cunningham, I noticed that you didn't tell Mr. Osho to call you as a witness.
>
> Is that personal [sic] decision that you don't want to testify in your own defense in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had a chance to talk to Mr. Osho about that decision, and do you need anymore [sic] time to talk to him or anyone else about the decision as to whether or not you will testify in this case?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: After considering that advice and your conversations with others, is it your personal decision not to testify in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Thank you, sir.

(Trial Tr. 202-03, Doc. No. 7-3.) Prior to this colloquy, Petitioner had willingly contradicted his attorney and informed the trial judge that he wanted to present evidence by calling Officer Carey to testify. Consequently, it was not unreasonable for the state court to conclude that Petitioner voluntarily had waived his right to testify in his own defense.

Petitioner has failed to demonstrate that the state court unreasonably applied Strickland to these evidence-related claims. See § 2254(d)(1). He likewise has failed to demonstrate that the

state court's rejection of these claims "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

### (b) Plea Offer

Petitioner also claims that counsel rendered ineffective assistance in connection with the State's plea offer. The Supreme Court has held that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). "As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). Additionally, it generally "is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement." Libretti v. United States, 516 U.S. 29, 50 (1995). To establish prejudice in the context of pleas "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). That is, a defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that": (1) "the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 1385.

The record shows that on September 29, 2010, the State communicated a plea offer to defense counsel, whereby Petitioner would plead guilty to possession of cocaine with intent to sell, the State would dismiss the habitual felon charge, and Petitioner would receive an active sentence of 15 to 18 months. (Plea Offer 33, Doc. No. 7-9.) The record also demonstrates that

counsel communicated the terms of the plea to Petitioner before it lapsed, and that Petitioner rejected the plea. (Trial Tr. 64-65, Doc. No. 7-4.) Petitioner claims that had counsel explained to him the "improbability of acquittal" and the "true sentence exposure" he faced at trial, he would have accepted the State's plea. (Pet. 21, Doc. No. 1; Pet'r's Mem. 4, Doc. 1-2.)

It would not have been unreasonable, however, for the state court to conclude that counsel provided competent assistance during the plea process. See Strickland, 466 U.S. at 689. Petitioner does not assert that counsel advised him to reject the plea and take his chances at trial, although a reasonably competent attorney could have advised Petitioner that hehad a good chance for acquittal. Indeed, Petitioner was acquitted of possession of cocaine with intent to sell.

A reasonably competent attorney also could have concluded that acquittal of the lesser included offense, possession of cocaine, was not improbable. The State's only direct evidence of possession was: (1) the eyewitness testimony of two detectives, one of whom was in a parked car on the opposite side of a busy six-lane road while the other was in a moving car, partially blocked by another moving car, when each saw Petitioner toss something small and white on the ground, and (2) the small baggie of cocaine found near the rear of McCorey's Yukon. A second small, white object – a paper package for a type of cigar – was found near the cocaine, and all of the relevant activity took place in the parking lot of a pool hall, located in a high crime area, where steady foot and automobile traffic had been observed. In short, the State's case was readily susceptible to reasonable doubt.

Furthermore, although he told the trial court at sentencing that he would have accepted the plea had he realized the testimony of the officers was enough to convict him (Trial Tr. 65, Doc. No. 7-4)[3], there is other evidence in the record that Petitioner would not have accepted the

---

[3] This statement casts doubt on Petitioner's current assertion that trial counsel did not explain the true sentencing consequences of losing at trial. Had he accepted the plea agreement, Petitioner would have pled guilty to possession

plea. For example, Petitioner adamantly maintained his innocence from the beginning, and according to the Petition, he demanded that trial counsel subpoena Adrian McCorey to testify that he had seen an unidentified man toss something small and white to the ground as the police entered the parking lot. These facts cut against any willingness by Petitioner to accept a plea.

Additionally, Petitioner made a statement to the court at sentencing that indicated he had personal and professional reasons for going to trial. During the period between his arrest and trial, Petitioner was free on bond (R. on Appeal 13, Doc. 7-5), and working as a producer for the cable television network, VH1, on which he had his own show. (Trial Tr. 64, Doc. No. 7-4). He also directed a play in Philadelphia and had a son, whom he included in his VH1 show. (Trial Tr., supra.) He and his family were planning to move to Los Angeles after the trial to start production of the new season of the show. (Trial Tr., supra.) He told the sentencing court that was the only reason he had gone to trial. (Trial Tr., supra, at 64-65.) A 15-18 month jail sentence would have derailed his plans, and possibly his career at VH1.

Considering the aforementioned evidence, the state court could have concluded that there was not a reasonable probability that Petitioner would have accepted the plea. See Lafler, 132 S.Ct. at 1385. This Court cannot hold that the state court's application of Strickland, and Lafler was unreasonable. See § 2254(d).

### ii. Appellate Counsel

Petitioner also claims that appellate counsel was ineffective for relying on the wrong legal basis when arguing that the trial court erred in denying a defense motion to dismiss.

---

of cocaine with intent to sell, a Class H felony, the State would have dismissed the habitual felon charge, and Petitioner would have agreed to a 15-18 month active sentence. (Plea Offer, MAR 33, Doc. No. 7-9.) The sentence offered in the plea deal was within the presumptive range for a stand-alone conviction for possession of cocaine with intent to sell by an offender, like Petitioner, with a prior record level V. N.C. Gen. Stat. § 15A-1340.17(c)-(d) (2010); (Plea Offer, MAR 33, Doc. No. 7-9). The risk of going to trial, therefore, was that Petitioner would be convicted of the underlying charge, thereby opening the way for the prosecution to obtain an habitual felon conviction and expose Petitioner to years in prison, rather than months.

(Pet'r's Mem., supra, at 6.)  Petitioner raised this claim in his amended MAR, and the state court denied it on the merits.

At the close of the State's evidence, counsel made, and the trial court denied, a motion to dismiss the offense of constructive possession.  (Trial Tr. 88-90, Doc. No. 7-3.)  On appeal, appellate counsel argued that the trial court erred in denying the motion because the evidence of possession was inherently incredible and contradictory.  (Def.-App. Br. 16-26, Doc. No. 7-6.)  The appellate court concluded that the detectives' testimony regarding what they saw Petitioner throw to the ground was neither inherently incredible nor contradictory.  Cunningham, 2012 WL 4878855 at *3.  Petitioner contends that had appellate counsel argued that the trial court erred in denying the motion to dismiss because there was insufficient evidence of constructive possession, there is a reasonable probability that the appellate court would have granted the appeal.  (Pet'r's Mem., supra, at 6.)

The North Carolina standard for reviewing a defendant's motion to dismiss requires the state courts to determine "whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense."  State v. Thaggard, 608 S.E.2d 774, 786 (N.C. Ct. App. 2005) (citation and quotation marks omitted).  "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion.  If substantial evidence . . . supports a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied."  Id. (citations omitted).  Additionally, "[i]n considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence."  Id. (citations omitted).

The state appellate court concluded that when considered in the light most favorable to the State, the detectives' testimony that they were certain the bag of cocaine recovered from the parking lot was the same object they had seen Petitioner toss onto the ground in a location consistent with where the bag of cocaine was recovered, was sufficient evidence to allow a reasonable juror to infer that Petitioner possessed the bag of cocaine. <u>Cunningham</u>, 2012 WL 4878855 at *3. In other words, the appellate court concluded that there was substantial evidence that Petitioner had possession of the cocaine.

In light of the appellate court's finding, there was not a reasonable probability that the appeal would have been successful had counsel argued that there was insufficient evidence Petitioner had constructive possession of the cocaine. <u>See Strickland</u>, 466 U.S. at 694. Thus, the MAR court's rejection of this claim was not the result of an unreasonable application of <u>Strickland</u>. <u>See</u> § 2254(d).

**E. Eighth Amendment Claim**

Petitioner claims that the sentence imposed for his habitual felon conviction violates the Eighth Amendment. Specifically, he contends that the sentence he received is grossly disproportionate to the sentence he would receive if he was convicted and sentenced as an habitual felon today. Petitioner raised this claim in his amended MAR, and the state court rejected it on the merits.

At the time of Petitioner's offense, a conviction for attaining habitual felon status carried with it a sentence enhancement requiring that the defendant be sentenced as if he had been convicted of a Class C felony, unless convicted and sentenced as a Class A, B1, or B2 felon. <u>See</u> N.C. Gen. Stat. § 14-7.6 (2010). In 2011, the North Carolina General Assembly amended the habitual felon statute and changed the sentence enhancement to require the defendant be

sentenced at a level four classes higher than the principal felony for which he had been convicted, unless convicted and sentenced as a Class A, B1, or B2 felon.  See JUSTICE REINVESTMENT ACT OF 2011, 2011 N.C. SESS. LAWS 192, sec. 3.(d) (eff. 1 December 2011); § 14-7.6 (2012).  As noted, Petitioner was sentenced in May, 2011 as if he were a Class C felon,  Were he sentenced under the amended law, Petitioner would be sentenced as if he had been convicted of a Class E felony, which is four classes higher than his Class I felony conviction for possession of cocaine.  Petitioner is essentially contending in his § 2254 petition that the failure to apply the sentencing amendments retroactively violates his rights under the Eighth Amendment.

The applicable section of the Justice Reinvestment Act makes clear, however, that the changes in the habitual felon sentencing formula apply only to offenses occurring on or after December 1, 2011 and are not retroactive.  See § 14-7.6 (2013) (ed.'s note).  This Court has not found, and Petitioner does not identify, any clearly established Supreme Court precedent recognizing a federal constitutional right to retroactive application of more lenient state sentencing laws where the state legislature or the state courts have indicated that the laws are only to be applied prospectively.  Cf. Wainwright v. Stone, 414 U.S. 21, 23-24 (1973) (rejecting argument that state supreme court was required to make retroactive its new construction of a Florida criminal statute).

As for Petitioner's Eighth Amendment argument, that Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  "The concept of proportionality is central to the Eighth Amendment." Graham v. Florida, 560 U.S. 48, 59 (2010) (quoting Weems v. United States, 217 U.S. 349, 367 (1910).  In general, however, the Eighth Amendment requires only that a sentence not be

"grossly disproportionate" to the crime.  Graham, 560 U.S. at 59.  The Eighth Amendment's proportionality inquiry, therefore, is simply whether, "given all the circumstances in a particular case," "the sentence is unconstitutionally excessive."  Id.

The Supreme Court has upheld aggravated sentences that were the product of state recidivist sentencing schemes against Eighth Amendment challenges.  Id. (citing Ewing v. California, 538 U.S. 11 (2003) (noting that the Court has "rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's so-called three-strikes recidivist sentencing scheme"); Rummel v. Estelle, 445 U.S. 263 (1980) (noting that the Court has "upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses")).  North Carolina's habitual felon statute is a product of the legislature's attempts to target repeat offenders.

In light of the above, the state court's conclusion that Petitioner's sentence for possession of cocaine and habitual felon status is not unconstitutionally excessive is not the result of an unreasonable application of clearly established Federal law.  See § 2254(d).  Respondent is entitled to summary judgment on this claim.

**F.  Sentencing Calculation**

Petitioner claims that the trial court's determination that he was a Prior Record Level "PRL" IV for sentencing purposes was not supported by the record.  Specifically, he contends the trial court erroneously concluded that his federal conviction for possession of a firearm was the equivalent of a Class G felony, rather than a Class I felony, under state law.  Petitioner raised this claim on direct appeal, and it was denied on the merits.  See Cunningham, 2012 WL 4878855 at *4-*5.

At sentencing, the State proffered Petitioner's 2005 federal conviction for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), for inclusion in his PRL. (R. on Appeal 75, Doc. No. 7-5.) Petitioner argued that the federal conviction should be treated as a Class I felony under North Carolina's structured sentencing scheme. The State provided copies of the federal statute and comparable North Carolina statute, Possession of a Firearm by a Felon, N.C.G.S. § 14-14-415.1(a), to the trial court. (R., supra, at 77-78.) The court compared the two statutes and determined that the federal conviction should to be classified as a Class G felony. (R., supra, at 79-80.) The court calculated that Petitioner had 9 prior record points and sentenced him as a PRL IV. (R., supra, at 90.)

"The writ of habeas corpus shall not extend to a prisoner unless . . . [he] is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Thus, "[a] federal court may not issue the writ on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984).

"The question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of [state] law." See State v. Wright, 708 S.E.2d 112, 125 (N.C. Ct. App. 2011) (citations omitted). Likewise, a trial court's assignment of a prior record level is a conclusion of state law. See id. Because Petitioner's claim is based solely on an allegation that the trial court misinterpreted state law when it classified his prior federal conviction as a Class G felony under North Carolina law, it is not cognizable on federal habeas review and must be dismissed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc.

No. 1) is **DENIED AND DISMISSED**;

2) Petitioner's motion to amend his Petition to name the correct respondent (Doc. No. 10) is **GRANTED**;

3) Respondent's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**; and

4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: August 5, 2015

Frank D. Whitney
Chief United States District Judge